## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Prettyattie Cooper,

               Petitioner,       Case No. 23-10767

v.                               Judith E. Levy
                                United States District Judge

Jeremy Howard,

                                Mag. Judge Anthony P. Patti

               Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS [1], DENYING CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Prettyattie Cooper, who is presently confined at the Women's Huron Valley Correctional Facility in Ypsilanti, Michigan, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1.) In 2021, Cooper pled guilty in Jackson County Circuit Court to involuntary manslaughter, Mich. Comp. Laws §750.321, and accessory after the fact to murder, Mich. Comp. Laws §750.505. The trial court sentenced Cooper to 10 to 15 years' incarceration for her manslaughter conviction and 3 to 5 years' concurrent incarceration for her accessory

conviction. For the reasons set forth below, Cooper's petition for a writ of habeas corpus is DENIED.

## I.     Background

The charges against Cooper relate to her involvement in an October 27, 2017 robbery and murder perpetrated by Reheim Armstrong. The Michigan Court of Appeals summarized the underlying facts of the case in its opinion affirming Armstrong's convictions:

> Defendant[ Armstrong's] convictions stem from the murder of Ronald Demetrius Owens. Prettyattie Cooper testified that, on the night of the murder, defendant asked her for a ride to a party store. Cooper and defendant met an unnamed individual at the party store. The individual got in the back of Cooper's vehicle and discussed a drug sale with defendant. According to Cooper, after the individual handed defendant what appeared to be a bag of drugs, defendant drew a gun and pointed it at the individual. The individual threw something at defendant and jumped out of the vehicle.

> Cooper next drove defendant to a second party store to pick up Orlando Cunningham. Cunningham testified that he and defendant had communicated on Facebook Messenger about finding someone to sell defendant cocaine. Cunningham testified that he messaged the victim, who agreed to sell cocaine to defendant. Cunningham directed Cooper to drive to the victim's mother's house. When they arrived, Cooper remained in her vehicle, while defendant and Cunningham exited to meet with the victim.

> Defendant and Cunningham met with the victim in the middle of the street. After discussing the price of drugs with the victim, defendant reached down to his pocket. According

2

to Cunningham, instead of money defendant pulled out a gun, pointed it at the victim's face, and shot him. Defendant ran back to Cooper's vehicle, and Cooper drove defendant away from the scene. Cunningham ran to his aunt's house and called his father. After his father advised him to go to the police, Cunningham went to the police station and gave a statement. At the station, he noticed that he lost both his cell phone and his wallet.

Police arrived on the scene of the shooting and found Cunningham's wallet and cell phone, as well as a baggie containing a suspected controlled substance. Cooper and defendant were arrested two days later.

*People v. Armstrong*, 2023 WL 328364, *1 (Mich. Ct. App. Jan. 19, 2023).

Cooper was initially charged with murder and possession of a firearm during commission of a felony ("felony-firearm") and was designated as a habitual offender. (*See* ECF No. 13-13, PageID.284–285.)

On September 17, 2021, the trial court held a pretrial conference for Cooper.[1] (*Id.*) At the beginning of the hearing, the attorneys indicated that Cooper had agreed to plead guilty to involuntary manslaughter and accessory after the fact to murder and to testify truthfully against

---

[1] Cooper's and Armstrong's cases were initially handled by Circuit Court Judge Thomas D. Wilson. (*See* ECF Nos. 13-1–13-11.) However, it appears that the cases were reassigned to Circuit Court Judge Edward J. Grant prior to trial. (*See* ECF No. 13-12.) Judge Grant presided over Cooper's plea hearing and sentencing. (*See* ECF Nos. 13-13, 13-14.) While conducting Cooper's sentencing, Judge Grant indicated that he had presided over Armstrong's trial and heard Cooper's testimony against Armstrong. (*See* ECF No. 13-14, PageID.318–319, 332, 334–335.)

Armstrong at his trial. (*Id.*) In exchange, the prosecutor agreed to amend the murder charge to involuntary manslaughter, dismiss the felony-firearm charge, and dismiss the habitual offender designation. (*Id.*) Cooper indicated her understanding and agreement with those terms. (*Id.* at PageID.285–286.) Defense counsel then questioned Cooper about their discussions regarding the specific benefits and risks of going to trial versus accepting the plea deal. (*Id.* at PageID.286–289.)

Following this colloquy, Judge Edward J. Grant repeated the terms of the agreement, and Cooper reiterated her desire to plead guilty. (*Id.* at PageID.290–292.) Cooper was informed that the maximum sentence she faced for manslaughter was 15 years' incarceration. (*Id.* at PageID.291.) Cooper denied the existence of any other terms of the agreement, promises, or threats. (*Id.* at PageID.294.) The court reiterated that Cooper faced "up to 15 years in the state prison" for the manslaughter conviction. (*Id.* at PageID.295.) Cooper indicated her understanding and desire to continue with the guilty plea. (*Id.*) The trial court then informed Cooper of the trial and appellate rights she was waiving by entering her plea, and she agreed to proceed with her guilty plea. (*Id.* at PageID.296–299.)

Cooper then testified regarding the factual basis for her plea. She admitted that she drove Armstrong to a location where he robbed a man at gunpoint. (*Id.* at PageID.300–301.) Cooper then drove Armstrong to a second location where they picked up Cunningham. (*Id.* at PageID.301.) The three then drove to meet the murder victim, Owens, at a third location, where Armstrong shot Owens in the face. (*Id.* at PageID.301–302.) Cooper then drove Armstrong away from the scene. (*Id.* at PageID.302.) She further conceded that driving Armstrong to and from the scene of the shooting aided and abetted the robbery that led to the death of the victim. (*Id.* at PageID.302–303.) The court accepted Cooper's guilty plea. (*Id.* at PageID.304–305.)

On October 28, 2021, Judge Grant held a sentencing hearing in Cooper's case. (ECF No. 13-14.) Prior to the hearing, the probation department scored Cooper's sentencing guidelines and calculated a minimum sentence range of 43 to 86 months' imprisonment. (*See id.* at PageID.313.) The prosecutor objected to several aspects of probation's scoring. (*Id.* at PageID.314–319.) As relevant here, the prosecutor asserted that offense variable 6 ("OV 6") should have been scored higher to properly reflect Cooper's "intent to kill or injure another individual."

(*Id.* at PageID.317.) The prosecutor argued that Cooper's plea to involuntary manslaughter indicated that Cooper "created a very high risk of death or great bodily harm, knowing that death or great bodily harm was probable." (*Id.*) Defense counsel objected, arguing that the evidence presented at Armstrong's trial indicated that Cooper had no knowledge that anyone was going to be killed or harmed. (*Id.* at PageID.317–318.) The court rejected defense counsel's argument, finding that Cooper knew Armstrong was armed with a handgun after driving him from the first robbery, and that when she drove him to the second robbery, "she put herself in a position where she created a very high risk of death, knowing that it was a probable result based on all the information she had at that time." (*Id.* at PageID.318–319.)

After the trial court approved the adjustment to OV 6 and several other offense variables, Cooper's recalculated guidelines called for minimum term of 58 to 114 months' imprisonment on the manslaughter charge. (*Id.* at PageID.335.) Judge Grant exceed the range by six months and sentenced Cooper to 10 to 15 years for involuntary manslaughter. (*Id.*; ECF No. 13-19, PageID.373.) The court imposed a lesser, concurrent

term of 3 to 5 years for the accessory after the fact conviction. (ECF No. 13-14, PageID.335; ECF No. 13-19, PageID.373.)

Following sentencing, Cooper requested and was appointed appellate counsel. (ECF No. 13-19, PageID.382–383.) Cooper's appellate counsel filed an application for leave to appeal in the Michigan Court of Appeals. (*Id.* at PageID.350–372.) Cooper's application raised two claims. First, Cooper asserted that the guidelines were scored incorrectly under state law to reflect an intent to kill or injure. (*See id.* at PageID.362–365.) In support of her first claim, Cooper also argued that scoring the guidelines based on disputed facts violated her Sixth Amendment rights under *Alleyne v. United States*, 570 U.S. 99 (2013). (*Id.* at PageID.363.) Second, Cooper asserted that her sentence was disproportionate and unreasonable under state law. (*Id.* at PageID.366–370.) On June 13, 2022, the Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented."[2] (*Id.* at PageID.349.)

On June 22, 2022, Cooper filed a *pro se* application for leave to appeal in the Michigan Supreme Court. (ECF No. 13-20, PageID.450–

---

[2] Judge Kristina Robinson Garrett noted that she would have granted the application for leave to appeal limited to the issue of proportionality. (ECF No. 13-19, PageID.349.)

464.) As relevant here, Cooper's application asserted that (i) she was "oversentenced" by Judge Grant, (ii) Judge Grant exceeded Cooper's guideline range and failed to state why he was sentencing her to prison, (iii) Judge Grant improperly increased her OV 6 score from 0 to 25, (iv) there was no evidence that she intended to harm anyone, and (v) her case should be sent back to Judge Thomas D. Wilson for resentencing. (*See id.* at PageID.451–459.) The Michigan Supreme Court denied leave to appeal because it was "not persuaded that the questions presented should be reviewed by this Court." (*Id.* at PageID.449.)

Cooper subsequently filed a *pro se* motion for relief from judgment with the state trial court. (ECF Nos. 13-15, 13-17.) As with her application for leave to appeal, Cooper's motion asserted that (i) she was "oversentenced" by Judge Grant, (ii) Judge Grant varied upward without explaining his reasons for doing so, and (iii) her OV 6 score was improperly increased from 0 to 25 without evidence of intent to cause bodily harm. (ECF No. 13-15, PageID.339.) Cooper also requested that she be resentenced by Judge Wilson and that she be placed on probation with GPS monitoring or sentenced to time served. (*Id.*; ECF No. 13-17, PageID.343.) The government opposed the motion. (ECF No. 13-16.) On

8

February 10, 2023, the trial court entered a brief order denying the motion, finding that the claims had already been raised and rejected on direct review. (ECF No. 13-18.) Cooper did not appeal that order.

On or about March 28, 2023, Cooper filed the present *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1, PageID.16.) Cooper's petition appears to assert six claims: (i) she was "oversentenced" on involuntary manslaughter, (ii) the prosecution failed to provide evidence to support its OV 6 scoring for bodily harm, (iii) the bodily harm enhancement was not part of her plea deal, (iv) the prosecution lied to her regarding Armstrong's sister-in-law, (v) Judge Grant never stated why he was sentencing Cooper to prison and failed to consider that she was threatened and harassed, and (vi) there was a lack of DNA or other evidence. (*See id.* at PageID.5–15.) Respondent Jeremy Howard filed an answer in opposition to Cooper's petition. (ECF No. 12.) Cooper subsequently filed numerous letters with the Court in support of her petition. (ECF Nos. 14–28.)

## II.   Legal Standard

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court's review of constitutional claims raised by a

state prisoner in a habeas action is limited to claims that were adjudicated on the merits by the state courts. *Stermer v. Warren*, 959 F.3d 704, 720 (6th Cir. 2020) (citing 28 U.S.C. § 2254(b)(1)). A habeas petitioner who asserts claims previously adjudicated by state courts must show that the state-court decision, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court

10

but unreasonably applies that principle to the facts' of petitioner's case."
*Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S.
at 413). "To succeed on a habeas petition, a petitioner must show more
than that the state court made an error; [they] must demonstrate that
'the state court's ruling on the claim being presented in federal court was
so lacking in justification that there was an error well understood and
comprehended in existing law beyond any possibility for fairminded
disagreement.'" *Gaona v. Brown*, 68 F.4th 1043, 1047 (6th Cir. 2023)
(quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

### III.   Analysis

#### A.    Sentencing Guidelines Scoring

The Court turns first to Cooper's claim that the trial court
improperly scored OV 6 based on an intent to cause bodily harm without
sufficient evidence and therefore improperly calculated her sentencing
guideline range. In evaluating this claim, the Court also considers
Cooper's argument before the Michigan Court of Appeals that the trial
court's scoring of the guidelines violated the Sixth Amendment. (*See* ECF
No. 13-19, PageID.363.)

To the extent Cooper is asserting that she is entitled to relief because the trial court erred in calculating her sentencing guideline under Michigan law, that claim is not cognizable on federal habeas review. *Coleman v. Curtin*, 425 F. App'x 483, 484–85 (6th Cir. 2011) ("To the extent that [the petitioner] asserts his sentence was improperly calculated under state law, his claim is not cognizable in federal habeas proceedings.") This is because federal habeas relief is limited to violations of federal law. *See Kissner v. Palmer*, 826 F. 3d 898, 904 (6th Cir. 2016); 28 U.S.C. § 2254(a).

The cognizable, federal aspect of this claim arises from the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004); and *Alleyne v. United States*, 570 U.S. 99 (2013). In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In *Blakely*, the Supreme Court clarified "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or

12

admitted by the defendant." 542 U.S. at 303. And in *Alleyne*, the Supreme Court extended *Apprendi* to mandatory minimum sentences, ruling that any fact that increases a mandatory minimum sentence is an "element" of the offense that must be submitted to the jury and proven beyond a reasonable doubt. 570 U.S. at 111–12.

In *People v. Lockridge*, 498 Mich. 358, 373–89 (Mich. 2015), the Michigan Supreme Court considered the impact of *Alleyne* on Michigan's then-mandatory sentencing guidelines. The *Lockridge* court concluded that the mandatory guidelines violated the Sixth Amendment because "the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that mandatorily increase the floor of the guidelines minimum sentence range." 498 Mich. at 364 (emphasis in original). The court's remedy was to make the guidelines advisory only. *See id.* at 391–92.

In this case, Cooper was sentenced on October 28, 2021, years after the Michigan sentencing guidelines were made advisory following *Lockridge*. (*See* ECF No. 13-14.) The United States Supreme Court has previously held that purely advisory applications of the guidelines do not run afoul of the Sixth Amendment. *See United States v. Booker*, 543 U.S.

220, 232 (2005) ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment."). Therefore, Cooper's Sixth Amendment jury-trial rights were not implicated by the trial court's consideration of facts beyond those to which she pled guilty when scoring the sentencing guidelines.

As such, Cooper is not entitled to habeas relief based upon this claim.

### B.   Unreasonable and Disproportionate Sentence

Cooper also argues that Judge Grant's departure from the recommended guideline range was unreasonable and disproportionate.

In *Lockridge*, the Michigan Supreme Court also held that a trial court's departure from the advisory guidelines could be reviewed for "reasonableness." 498 Mich. at 392. In *People v. Steanhouse*, 500 Mich. 453, 471–75 (Mich. 2017), the Michigan Supreme Court clarified that the meaning of "reasonableness" under the now-advisory sentencing guidelines was governed by the principle of proportionality previously outlined in its decision in *People v. Milbourn*, 435 Mich. 630, 650–51

14

(Mich. 1990). Under *Milbourn*, "the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse*, 500 Mich. at 475 (quoting *Milbourn*, 435 Mich at 661). Because *Steanhouse* and *Milbourn* were decided on state principles, Cooper's claim that her sentence was not unreasonable and disproportionate is not cognizable under § 2254. *See Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) (order) ("[A]ny state law challenge to the reasonableness of [the petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review.").

Cooper's claim that her sentence was unreasonable and disproportionate fairs no better if construed under the Eighth Amendment. The Supreme Court has held that "the Eighth Amendment does not require strict proportionality between [the] crime and [the] sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (Kennedy, J., concurring in part and concurring in the judgment)). "[A] sentence within

the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (alteration in original) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Here, the statutory maximum for involuntary manslaughter is 15 years' imprisonment. *See* Mich. Comp. Laws § 750.321. Cooper's sentence of 10 to 15 years' imprisonment on that charge is within the statutory maximum. As such, Cooper's sentence does not violate the Eighth Amendment.

Accordingly, Cooper is not entitled to habeas relief based upon this claim.

### C.   Cooper's Remaining Claims

Finally, the Court will briefly address Cooper's remaining claims. Respondent correctly asserts that these claims are potentially unexhausted and procedurally defaulted. (*See* ECF No. 12, PageID.126–127, 131–132, 136–137, 142–143.) Nevertheless, the Court may deny relief on the merits with respect to unexhausted claims, especially where that course provides the simplest basis for decision. *See* 28 U.S.C. § 2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

With respect to her assertions that bodily harm was not part of her plea deal, Cooper's claim is inconsistent with the record. Cooper pled guilty to involuntary manslaughter, and she was twice informed during the plea hearing that that the offense carried a maximum term of 15 years in prison. (ECF No. 13-13, PageID.291, 295.) In her petition, Cooper contends that her trial counsel "said I was going to get probation" but then "allowed [the] prosecution to hit [her] with bodily harm." (ECF No. 1, PageID.10.) However, during her plea hearing, Cooper denied that there were any other promises made to her regarding her guilty plea besides those stated on the record. (ECF No. 13-13, PageID.294.) And at sentencing, her trial counsel objected to the prosecutor's OV 6 arguments and made no mention of any prior agreement regarding the guidelines. (ECF No. 13-14, PageID.317–318.) As such, Cooper is not entitled to habeas relief on this basis.

Cooper next claims that the prosecutor lied about Armstrong's sister-in-law being in prison. (*See* ECF No. 1, PageID.5,10.) But Cooper does not elaborate on the claim or how this alleged representation affected her decision to plead guilty, her conviction, or her sentence. Nor does Cooper attempt to explain how this alleged statement constituted a

violation of her federal constitutional rights. To the extent Cooper claims that the prosecutor's alleged misrepresentation acted as some sort of threat to induce her plead guilty, Cooper denied at the plea hearing that she was threatened or coerced in any way. (ECF No. 13-13, PageID.294.) And the transcript of her plea hearing, taken as a whole, demonstrates that her plea was voluntary and intelligent. *See Boyd v. Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004) ("When a defendant . . . brings a federal habeas petition challenging his [or her] plea, the state generally satisfies its burden [to show that a plea was intelligent] by producing a transcript of the state court proceeding." (alterations in original) (quoting *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993)). Thus, this claim does not support habeas relief.

Next, Cooper claims that Judge Grant failed to articulate his reasons for sentencing Cooper to prison and that he failed to consider alleged threats and harassments towards Cooper. As an initial matter, a state judge's failure to articulate their reasons for imposing a particular sentence in violation of state law is not a basis for habeas relief. *See Koras v. Robinson*, 123 F. App'x 207, 214 (6th Cir. 2005). Moreover, Judge Grant explained the basis for his sentence at length at Cooper's sentencing

hearing. (ECF No. 13-14, PageID.332–335.) With respect to the alleged threats and harassment, Cooper fails to identify these threats or explain how they were presented to Judge Grant as mitigation. Moreover, the failure to consider mitigating circumstances in a noncapital case at sentencing does not raise federal constitutional concerns. *See Hastings v. Yukins*, 194 F. Supp. 2d 659, 673 (E.D. Mich. 2002). As such, this claim also fails to provide a basis for habeas relief.

Finally, Cooper claims that her DNA was not found at the crime scene. It is unclear how this assertion assists her. Cooper's convictions stem from her admission that she drove Armstrong to and from the scene of the robbery and murder of Owens, despite knowing that Armstrong was armed with a firearm and had just robbed another man. (*See* ECF No. 13-13, PageID.299–303.) As such, the absence of DNA evidence provides no basis for relief.

## IV.   Requests for Appointment of Counsel, a Hearing, and Compassionate Release

In several of her letters, Cooper requests that the Court appoint counsel to represent her in this proceeding. (*See* ECF Nos. 23, 25, 27, 28.) A petitioner has no constitutional right to counsel in habeas proceedings. S*ee Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002). However, a

19

habeas petitioner may obtain representation at any stage of the case "[w]henever the United States magistrate judge or the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). As a result, "[t]he decision to appoint counsel for a federal habeas petitioner is within the discretion of the court and is required only where the interests of justice or due process so require." *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986). "Counsel may be appointed, in exceptional cases, for a prisoner appearing *pro se* in a habeas action." *Lemeshko v. Wrona*, 325 F. Supp. 2d 778, 788 (E.D. Mich. 2004). "The exceptional circumstances justifying the appointment of counsel to represent a prisoner acting *pro se* in a habeas action occur where a petitioner has made a colorable claim, but lacks the means to adequately investigate, prepare, or present the claim." *Id.* Here, none of Cooper's claims are colorable and further investigation or assistance by an attorney would not alter the Court's legal conclusions on Cooper's claims. Accordingly, the Court denies Cooper's requests for the appointment of counsel.

Cooper's letters also include several requests for a hearing. (*See* ECF Nos. 25, 26, 27, 28.) In a habeas proceeding under § 2254, "a determination of a factual issue made by a State court shall be presumed

to be correct." 28 U.S.C. § 2254(e)(1). Where a petitioner "has failed to develop the factual basis of a claim in State court proceedings" a district court may only hold an evidentiary hearing if, as relevant here, the petitioner shows that "the claim relies on . . . a factual predicate that could not have been previously discovered through the exercise of due diligence." *Id.* § 2254(e)(2)(A). Additionally, the petitioner must demonstrate that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Id.* § 2254(e)(2)(B). As an initial matter, Cooper fails to identify what evidence she would offer if granted an evidentiary hearing. Additionally, "when a federal court is able to resolve a habeas claim on the record before it, it may do so without holding an evidentiary hearing." *Black v. Carpenter*, 866 F.3d 734, 742 (6th Cir. 2017). Therefore, the Court denies Cooper's requests for a hearing.

Finally, Cooper requests compassionate release due to the deteriorating health of her mother. (ECF No. 24.) However, a habeas petition under § 2254 is not a proper vehicle for a request for compassionate release. *See* 28 U.S.C. § 2254(a) (limiting habeas relief

21

under § 2254 to situations where a person "is in custody in violation of the Constitution or laws or treaties of the United States"). To the extent Cooper seeks compassionate release or a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), such relief is unavailable to her because she is not currently serving a federal sentence. As such, the Court denies Cooper's request for compassionate release.

## V. Certificate of Appealability

Before Cooper may appeal this decision, the Court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), a habeas petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). Here, reasonable jurists would not debate the resolution

of any of Cooper's claims. The Court will therefore deny a certificate of appealability.

Finally, because an appeal cannot be taken in good faith, the Court denies leave to proceed *in forma pauperis* on appeal should Petitioner decide to appeal this decision. 28 U.S.C. § 1915(a)(3).

## VI.   Conclusion

For the reasons set forth above, the Court DENIES WITH PREJUDICE the petition for a writ of habeas corpus (ECF No. 1), DENIES Cooper a certificate of appealability, and DENIES Cooper permission to proceed *in forma pauperis* on appeal.

The Court also DENIES Cooper's requests for appointment of counsel, a hearing, and compassionate release. (*See* ECF Nos. 23–28.)

Finally, the Court DIRECTS the Clerk's Office to SEAL Cooper's October 14, 2023 letter (ECF No. 17) as it contains Cooper's unredacted social security number. *See* Fed. R. Civ. P. 5.2(a).

IT IS SO ORDERED.

Dated: September 17, 2024          s/Judith E. Levy
Ann Arbor, Michigan               JUDITH E. LEVY
                                  United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 17, 2024.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager
